**Rodolfo MACIAS and The City of Laredo, Appellants,**

v.

**Jorge RAMOS, Appellee.**

**No. 04–95–00405–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 7, 1996.

Jim Korioth, Law Offices of Tony Korioth, P.C., Austin, for Appellants.

Daniel P. O'Connor, Jo Chris G. Lopez, Stephen A. Katz, Shaddox, Compere, Walraven & Good, P.C., San Antonio, for Appellee.

Before CHAPA, C.J., and HARDBERGER and GREEN, JJ.

CHAPA, Chief Justice.

This is an appeal from a take nothing judgment entered against appellants in a personal injury action. On January 19, 1990, appellant Rodolfo Macias, a sanitation worker for the City of Laredo, was struck by an automobile driven by appellee when he stepped from behind a sanitation truck into the street. Appellant, the City of Laredo, a self-insured worker's compensation carrier, filed suit on behalf of itself and Macias for the purpose of asserting its right of subrogation pursuant to Tex.Rev.Civ.Stat.Ann. art. 8307 sec. 6a (Vernon 1967) (now repealed). Judgment was entered in accordance with the jury's verdict that Macias' injuries were caused by his own negligence and, therefore, no damages should be awarded. In four points of error, appellants appeal the judgment of the trial court.

In their first point of error, appellants contend that the trial court erred in permitting appellee, over the objection of appellants, to introduce evidence that Macias had received benefits from a collateral source as a result of the accident made the basis of this suit. At trial, Macias testified regarding his hourly wage and the fact that he did not receive a paycheck from the City of Laredo during the seven months that he did not work following the accident. On cross examination, Macias revealed that he did receive worker's compensation benefits during the time that he was not working. During redirect examination Macias testified that any recovery he received up to $38,000 would be recouped by the city as subrogation for the worker's compensation benefits he had received.

Appellants allege that the introduction of evidence regarding Macias' receipt of benefits from a collateral source was error. Appellee contends that Macias "opened the door" to such an inquiry by leaving the jury with the impression that he was not paid while recuperating from his injuries.

The court's ruling on the admissibility of evidence regarding income from a collateral source is reviewed under an abuse of discretion standard. *See Castro v. U.S. Natural Resources, Inc.*, 880 S.W.2d 62, 67 (Tex.App.—San Antonio 1994, writ denied). In order to obtain reversal based upon the admission of such evidence, appellant must demonstrate that the trial court's ruling was erroneous and that the error was calculated

to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mutual Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989). Reversible error is not typical in cases involving rulings on questions of evidence unless the complaining party can demonstrate that the whole case turns on the particular evidence admitted or excluded. *Service Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 822 (Tex.App.—Dallas 1993, no writ).

■ It is well settled that, as a general rule, evidence concerning worker's compensation benefits is inadmissible in a suit against a third-party tortfeasor because it is immaterial and it has a tendency to confuse the jury. *See, e.g., Myers v. Thomas,* 143 Tex. 502, 186 S.W.2d 811, 813 (1945); *Castro,* 880 S.W.2d at 66–67; *Exxon Corp. v. Shuttlesworth,* 800 S.W.2d 902, 907 (Tex.App.—Houston [14th Dist.] 1990, no writ); *J.R. Beadel & Co. v. De La Garza,* 690 S.W.2d 71, 74 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Exceptions to this rule exist, but are only relevant for impeachment purposes when a witness gives testimony inconsistent with the receipt of benefits. *De La Garza,* 690 S.W.2d at 74. For example, in *Castro,* we held that the fact that worker's compensation benefits were received could be utilized to impeach testimony that Castro was concerned about paying his bills. *Castro,* 880 S.W.2d at 67. Similarly, in *Mundy v. Shippers, Inc.,* 783 S.W.2d 743 (Tex.App.—Houston [14th Dist.] 1990, writ denied), the court determined that testimony regarding inability to pay bills warranted the introduction of evidence regarding the receipt of collateral source benefits. *Mundy,* 783 S.W.2d at 745. Again, in *Barrera v. E.I. DuPont De Nemours & Co., Inc.,* 653 F.2d 915 (5th Cir.1981), the court held evidence of collateral benefits admissible where plaintiff had testified that he did not even have "a penny in [his] pocket." *Barrera,* 653 F.2d at 920–21; *see also Johnson v. Reed,* 464 S.W.2d 689, 693 (Tex. Civ.App.—Dallas 1971) (evidence of collateral benefits admissible when plaintiff testified that she had to work to support her daughter), *cert. denied,* 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972).

■ In the present case, Macias merely testified that he did not receive a paycheck during the time that he was recovering from his injuries. Such a statement is not inconsistent with the receipt of benefits and it is far from a claim of being unable to meet financial obligations or an assertion of poverty. Macias' statement does not even rise to the level of a general reference to his financial situation, which does not warrant the invocation of the exception to the collateral source rule. *See General Motors Corp. v. Saenz,* 829 S.W.2d 230, 243 (Tex.App.—Corpus Christi 1991), *rev'd on other grounds,* 873 S.W.2d 353 (Tex.1993); *Exxon Corp.,* 800 S.W.2d at 908. Accordingly, the trial court erred in allowing the introduction of evidence regarding Macias' receipt of worker's compensation benefits during his convalescence.

However, the finding of error begins rather than ends our inquiry. The admission of evidence in violation of the collateral source rule is reviewed as is any other evidentiary ruling. As such, once error has been established, we must review the entire record to determine whether Macias' testimony regarding collateral benefits, even though improperly admitted, was calculated to cause and probably did cause the rendition of an improper judgment. *Gee,* 765 S.W.2d at 396; Tex.R.App.P. 81(b)(1). In this case, the jury determined that Macias was solely responsible for his injuries. Because the jury's determination regarding liability was the basis for its verdict, the jury did not reach the issue of damages.

■ Aside from the relevancy issue, the theory behind the collateral source rule is the concern that juries, when they are permitted to consider collateral benefits, will view a plaintiff's recovery as a double recovery and adjust their verdicts accordingly. *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 582 (Tex.App.—Houston [1st. Dist.] 1992, no writ). In the present case, this concern is not raised. Having never reached the issue of damages, the jury was never confronted with crediting appellee for the amount Macias received from worker's compensation benefits. *See Castro,* 880 S.W.2d at 67 (holding that where jury is not faced with balancing

the effects of collateral benefits, no harm arises).

█ An erroneous ruling on admissibility of evidence is typically not reversible unless the evidence is controlling on a material issue dispositive of the case. *Gee,* 765 S.W.2d at 396. In this circumstance, we cannot conclude that the judgment was controlled by the improperly admitted testimony regarding Macias' receipt of worker's compensation benefits. Appellants' first point of error is overruled.

In their second point of error, appellants contend that appellee's reference to Macias' receipt of collateral benefits in closing argument constitutes reversible error. Specifically, appellants complain of the following statement:

> You also heard that Mr. Macias had his medical expenses paid, had his lost wages paid and received some additional money. Please keep those items in mind when you are asked to be awarding damages in this case.

█ In order to obtain reversal on the basis of improper jury argument, appellants must prove (1) that an error was made in argument; (2) that the argument was not invited or provoked; (3) that the error was preserved by the proper objection, motion to instruct or motion for mistrial; and (4) that the argument was not curable by an instruction, prompt withdrawal, or reprimand. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). In the present case, appellants did not object to the argument now complained of on appeal, nor did they ask that the jury be instructed to disregard the statement or move for a mistrial. Appellants state that they opted not to object at that point because it was clear that the court would overrule their objection and the objection would emphasize the improper argument to the jury. Accordingly, appellants allege that the jury argument was incurable. An objection is not required in order to preserve error if the error is deemed to be incurable. *Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 333 (Tex.1968). However, there are only rare instances of incurable harm arising from improper jury argument. *Reese,* 584 S.W.2d at 839.

█ The test for incurable error in jury argument is whether the argument, when viewed in light of the entire record was so inflammatory as to strike at the heart of the adversarial process or appeal to fundamental prejudices. *Boone v. Panola County,* 880 S.W.2d 195, 198 (Tex.App.—Tyler 1994, no writ); *see Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 758 (Tex.App.—Texarkana 1992, writ denied) (incurable argument where attorney accused opposing counsel of manufacturing evidence and perjury); *Texas Employers' Ins. Ass'n v. Guerrero,* 800 S.W.2d 859, 866–67 (Tex.App.—San Antonio 1990, writ denied) (incurable error where argument intentionally appealed to prejudice against a party's ethnicity). In such a case, an instruction to the jury to disregard the argument would not eliminate the probability that an improper verdict resulted from the error. *Goswami v. Thetford,* 829 S.W.2d 317, 321 (Tex.App.—El Paso 1992, writ denied).

█ Following a review of the record, it is apparent that the complained of jury argument in the present case does not rise to the level of incurable error. Given that the jury determined that Macias was wholly responsible for his injuries, we cannot conclude that the brief mention of collateral benefits in closing argument caused the jury to render a verdict they otherwise would not have rendered. Appellants' second point of error is overruled.

In points of error three and four, appellants complain of the jury's determination that Macias should recover no damages for his injuries. Appellants correctly assert that the evidence regarding Macias' injuries was largely uncontroverted. Given this uncontroverted evidence, appellants urge first, that no evidence supports the jury's finding of zero damages, and second, that the finding of zero damages is against the great weight and preponderance of the evidence.

In question 1 of the jury charge, the jury was asked, "Did the negligence, if any, of the persons named below proximately cause the occurrence in question?" The presiding juror, acting for a unanimous jury, wrote "NO" beside the name of Jorge Ramos, the appellee, and "YES" beside the name of Rodolfo Macias. The record supports this verdict, and appellants make no complaint regarding the jury's determination of liability.

Question 3 of the charge asked the jury, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate plaintiff Rodolfo Macias for his injuries, if any, that resulted from the occurrence in question?" The jury answered "–0–" to all elements. Appellants' point of error misconstrues the jury question. Appellants appear to believe that the jury determined that Macias suffered "no damages whatsoever." The question actually inquires as to what amount of money would compensate Macias for his injuries, if any. The jury, having determined that Macias was responsible for his injuries, obviously concluded that he was not entitled to receive compensation for those injuries. There is no indication that the jury determined that Macias did not suffer injuries.

More importantly, the issue of damages became irrelevant when the jury determined that Macias was soley liable for the accident. *See Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334, 335 (1939) (issue of damages became immaterial when jury found contributory negligence). "It has long been the law in Texas that a finding of zero damages, even if contrary to the uncontroverted evidence, is rendered immaterial by a finding of no liability." *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 634 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (citing *Southern Pine Lumber*, 124 S.W.2d at 335). A jury answer is considered immaterial if it will not alter the effect of the verdict. *Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex.1986). In the present case, regardless of what the jury had answered regarding compensation, the court would have been compelled to enter a take-nothing judgment against plaintiffs due to the jury's findings regarding liability. As such, the issue of compensation was immaterial. Appellants' third and fourth points of error are overruled.

The judgment of the trial court is affirmed.

HARDBERGER and GREEN, JJ., concur.