COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TEXAS DEPARTMENT OF TRANSPORTATION, | § | No. 08-17-00047-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 171st District Court |
| | § | |
| | | of El Paso County, Texas |
| GENARO FLORES, | § | |
| | | (TC# 2014-DCV1263) |
| Appellee. | § | |

## **O P I N I O N**

Genaro Flores sued the Texas Department of Transportation (TxDOT), his former employer, for age discrimination under Chapter 21 of the Texas Labor Code. Following a jury trial, the jury found in favor of Flores and the trial court rendered judgment on the jury's verdict. TxDOT challenges the judgment based on (1) whether the trial court had subject matter jurisdiction over this discrimination claim asserted against a governmental employer, and (2) whether the evidence was legally and factually sufficient to support the jury's verdict. We affirm as modified.

## **BACKGROUND**

Flores worked for TxDOT as an assistant supervisor assigned to the Maintenance Section of the El Paso office. In 2013, when he was terminated from his employment, Flores was 46 years old. The maintenance section was supervised by Hector Granados, who in turn, was supervised

by Tim Twomey, the West El Paso Area Engineer for the West Area Office. As the District Engineer, Bob Bielek supervised Twomey and generally oversaw the El Paso District.

TxDOT initially hired Flores in 1994 as a "Tech 1," an entry-level position. After years of continuous employment, Flores was promoted to assistant maintenance supervisor in 2004. Flores loved his job and felt proud to be promoted to a position where he supervised more than twenty crew members. In 2011, he was temporarily promoted to maintenance supervisor when the previous supervisor retired, and he performed well. On several occasions, Flores was rated on evaluations as an employee who performed at the exceptional level who frequently exceeded expectations. His record also showed he was never formally disciplined during this period.

Circumstances changed, however, after Granados was selected as permanent supervisor of the section and Flores began working under his supervision. Soon after his promotion, Granados initiated disciplinary action against Flores for which Flores eventually received a written reprimand based on his alleged failure to meet performance standards and follow TxDOT procedures. Flores received another written reprimand for allegedly taking a TxDOT work truck into New Mexico to visit a bank ATM, which purportedly violated TxDOT's policies regarding out-of-state use of official vehicles for non-state business purposes.

Following issuance of his second written reprimand, Flores received further disciplinary actions. After additional instances of purported malfeasance, Granados recommended to TxDOT's Human Resources Department that Flores be issued another written reprimand. Human Resources, however, recommended probation—a higher level of discipline—and Flores was in fact placed on probation. In April 2013, Granados disciplined Flores again because Flores allegedly took a TxDOT truck to a local store to purchase supplies for his personal business, which purportedly

2

violated TxDOT's policy on the use of state vehicles for personal activities. After this latest allegation, Granados again submitted disciplinary action paperwork to Human Resources. Although Human Resources and Bielek recommended terminating Flores, Granados claimed that he and Twomey persuaded Bielek not to terminate Flores. Flores was given probation and five days' suspension without pay. Granados additionally issued a formal warning describing policies Flores had purportedly violated and warning that future violations could result in termination.

On June 25, 2013, a vehicle traveling on a highway struck and killed a TxDOT employee who was working on an exit sign alongside another worker. As a result of this incident, TxDOT held a meeting at which District Engineer Bielek gave a verbal order requiring use of an attenuator[1] whenever TxDOT had "boots on the ground." On July 11, 2013, Flores assigned two teams to pick up litter on highways and ordered another employee to request two attenuators from a contractor, one for each crew. After making these assignments, Flores left the yard to perform his own duties and assumed the two attenuators had been ordered and obtained. Although the contractor only provided one attenuator, Flores was not initially aware. When Flores saw that one of the crews was working without an attenuator, he immediately pulled over and called one of the crew members, Pablo Ramirez, on the radio to ask him about the absence of an attenuator. Up until that time, Flores was not aware that the crew had been working without an attenuator. When Granados overheard Flores calling Ramirez on the radio, Granados called Flores on his cell phone and directed him to return to the office.

At a meeting held with crew and Granados, Pablo Ramirez admitted it had been his fault that he worked without an attenuator and accepted responsibility for the incident. Nonetheless,

---

[1] An attenuator is a large truck with warning signals and a crash cushion used to protect workers on roadways.

Granados filed a report with Human Resources with a recommendation that Flores receive another written reprimand. Human Resources in Austin, however, recommended that Flores be terminated. District Engineer Bielek testified that he eventually made the decision to terminate Flores for the three previous disciplinary actions and because of the attenuator incident. On July 31, 2013, TxDOT issued termination paperwork to Flores signed by Granados and Twomey.

Flores later testified at trial that he had met with Bielek prior to his termination and told Bielek that Granados was treating him and the "older guys" in his section unfairly. Bielek responded that Flores needed to follow Granados's instructions, and that perhaps it was time for Flores to get another job. Flores also testified that he told a Human Resources representative, Carmela Magallanez-Aguilar, about Granados treating him and other older employees unfairly but she merely responded that Granados and Twomey were his supervisors. Further, another employee, Javier Castillo, made a formal complaint of age discrimination about Granados, but Granados was unaware of the complaint until the time he was deposed and Magallanez-Aguilar, the TxDOT Human Resources representative, was not questioned about Granados's treatment of employees.

Following his termination, Flores filed a verified charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC), alleging that Granados terminated him because of his age. After both organizations issued notices of his right to sue, Flores sued TxDOT pursuant to Texas Labor Code, Chapter 21, alleging that he was terminated based on his age. TxDOT filed a plea to the jurisdiction and motion for summary judgment, both of which the trial court denied.[2] The jury rendered a verdict in favor of Flores

---

[2] The trial court denied TxDOT's motion to stay the proceedings pending its interlocutory appeal of the trial court's summary judgment order, and we denied mandamus relief in *In re Texas Dep't of Transp*., 510 S.W.3d 701 (Tex.

finding that Flores's age was a motivating factor in TxDOT's decision to terminate his employment. Following a hearing on TxDOT's motion for judgment notwithstanding the verdict and Flores's motion for entry of judgment, the court rendered judgment on the jury's verdict. TxDOT subsequently filed a request for findings of fact and conclusions of law and a motion for a new trial, but the trial court did not grant a new trial or file findings or conclusions. This appeal followed.

## DISCUSSION

TxDOT appeals the trial court's judgment in eight issues, arguing that (1) Flores's case should be dismissed because there is no evidence establishing a prima facie case of age discrimination, and there is no evidence that age was a motivating factor in TxDOT's decision to terminate him; (2) there is insufficient evidence that age was a motivating factor in TxDOT's decision to terminate him; (3) the jury charge contained two erroneous instructions, one of which was an improper "permissive pretext" instruction, and both of which constituted an improper comment on the weight of the evidence; (4) the trial court erred by excluding documents pertaining to Flores's disciplinary actions; (5) the trial court erred by finding reinstatement feasible without entering the requested findings of fact and conclusions of law; (6) the trial court erred by granting reinstatement; (7) the evidence is factually and legally insufficient to sustain the compensatory damages award; and (8) the trial court erred in awarding Flores the right to execute. In the interest of efficiency, we address the issues simultaneously where possible.

### Sufficiency of the Evidence

---

App.—El Paso 2016, orig. proceeding). The trial proceeded prior to the rendering of decision on TxDOT's interlocutory appeal, and we dismissed the appeal as moot in *Texas Dep't of Transp. v. Flores*, 513 S.W.3d 826 (Tex. App.—El Paso 2017, no pet.).

*Applicable Law*

In its first two issues, TxDOT argues that the trial court lacked jurisdiction over the case because the evidence was legally and factually insufficient to support the judgment. Flores sued TxDOT under the Texas Commission on Human Rights Act (TCHRA). *See generally* TEX. LAB. CODE ANN. §§ 21.051–.556. Among other protections, the TCHRA prohibits an employer from terminating or discriminating against an employee because of the employee's age. *Id*. § 21.051(1). TCHRA provisions referring to discrimination because of age or on the basis of age apply only to discrimination against an individual 40 years of age or older. *Id*. § 21.101. Because the Legislature intended to correlate state law with federal law addressing discrimination by enactment of the TCHRA, we may look to federal case law to inform our analysis. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing TEX. LAB. CODE ANN. § 21.001); *see also Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). To establish a violation of the TCHRA, the plaintiff must show that he or she was (1) a member of the class protected by the TCHRA; (2) qualified for his or her position; (3) terminated by the employer; and (4) treated less favorably than similarly situated members of the opposing class, such that age was a motivating factor in the decision to terminate the plaintiff. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citing *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)); *Canchola*, 121 S.W.3d at 739; *Moreno v. Texas Dept. of Transp*., 440 S.W.3d 889, 895 (Tex. App.—El Paso 2013, pet. denied).

Texas courts recognize two alternative methods of proof in discriminatory treatment cases. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The first method involves proving discriminatory intent via direct evidence of what the defendant said and did. *Id*.

6

Recognizing, however, that motives for terminating employees are often more covert than overt, the Supreme Court of the United States established a second method of proof which employs a burden-shifting framework once a plaintiff establishes a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Although the precise elements of this showing will vary depending on the allegations, *id*., the plaintiff's burden at this stage of the case "is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The burden of going forward then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the complained-of action or decision. *McDonnell Douglas*, 411 U.S. at 802. The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's prima facie showing. *Burdine*, 450 U.S. at 254. The burden then shifts back to the complainant to show that the employer's stated reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805-07; *Burdine*, 450 U.S. at 256.

In discrimination cases which have not been fully tried on the merits, we apply the burden-shifting analysis established in *McDonnell Douglas*, 411 U.S. at 802–03; *Canchola*, 121 S.W.3d at 739 (citations omitted). Where a discrimination case has been fully tried on the merits, however, a reviewing court does not engage in a burden-shifting analysis. *Canchola*, 121 S.W.3d at 739 (citing *Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir. 2000)). Instead, we only inquire whether the evidence is legally sufficient to support the jury's ultimate finding. *Id*. (citing *Rutherford v. Harris Cty., Texas*, 197 F.3d 173, 180–81 (5th Cir. 1999)). At trial, the burden of proving that age was a motivating factor in the employee's termination belongs to the plaintiff claiming discrimination. *See id*. (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001)).

7

TxDOT argues in its first issue that there is no evidence that Flores's age was a motivating factor in his termination, and that the case should therefore be dismissed for want of jurisdiction based on TxDOT's sovereign immunity. Sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Where a jurisdictional challenge under the TCHRA is raised after a trial on the merits, the prima facie case is no longer relevant; instead, we must determine on review whether the evidence is legally sufficient to support the jury's ultimate finding. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015); *City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131, at *2 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op., not designated for publication) (citing *Prairie View A & M Univ. v. Brooks*, 180 S.W.3d 694, 704 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Because TxDOT challenges the legal and factual sufficiency of the jury's determination that age was a motivating factor in Flores's termination, we consider both the legal sufficiency of TxDOT's immunity together with TxDOT's second issue regarding the legal and factual sufficiency of the jury's determination that age was a motivating factor in Flores's termination.

Under the legal sufficiency standard, we must credit evidence favorable to the judgment if a reasonable fact finder could, disregard contrary evidence unless a reasonable fact finder could not, and reverse the fact finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded fact finder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain a legal sufficiency challenge if the record demonstrates (1) the complete absence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital

8

fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id*. at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When considering a factual sufficiency challenge brought by a party without the burden of proof at trial, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *City of El Paso v. Parsons*, 353 S.W.3d 215, 225 (Tex. App.—El Paso 2011, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Under either standard, we acknowledge that the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id*. (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). The jury may choose to believe one witness and disbelieve another, and we must not impose our opinion to the contrary. *Id*. (citing *City of Keller*, 168 S.W.3d at 819). The inferences drawn from the evidence is also within the province of the jury, and thus we must assume that the jurors made all inferences in favor of the verdict if reasonable minds could do so and disregard all other inferences not so drawn. *City of Keller*, 168 S.W.3d at 820–21. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id*. at 822.

*Analysis*

We now determine whether Flores satisfied his burden at trial to present sufficient evidence

9

to support the jury's finding that age discrimination was a motivating factor in TxDOT's decision to terminate him. *See Claymex Brick and Tile, Inc. v. Garza*, 216 S.W.3d 33, 36 (Tex. App.—San Antonio 2006, no pet.) (citing *City of Austin Police Dep't. v. Brown*, 96 S.W.3d 588, 596 (Tex. App.—Austin 2002, pet. dism'd)); *Canchola*, 121 S.W.3d at 739. The parties do not dispute that Flores met the threshold burden of establishing that he was discharged from employment, though qualified for the job, at a time when he met the age requirement of the protected class. At issue, we must determine whether legally sufficient evidence exists to establish that Flores's age was a motivating factor in TxDOT's decision to terminate his employment. *See El Paso Healthcare Sys., Ltd. v. Carmona*, 160 S.W.3d 267, 274 (Tex. App.—El Paso 2005, pet. granted), *vacated pursuant to settlement* (Tex. Dec. 2, 2005).

Here, TxDOT first argues that there is no evidence that its stated reason for the termination was a pretext or that age was a motivating factor in Flores's termination but, rather, that Flores was terminated because of his disciplinary history. In particular, TxDOT argues Flores's testimony that Granados made comments related to age does not serve as competent evidence that age was a motivating factor in his termination because (1) Flores could not recall the last time Granados made a comment about age; (2) no such comments were made leading up to his termination, or on the day he was terminated; and (3) nobody at TxDOT told him that he was being terminated because of his age and no witness testified to that effect. To the extent that Flores presented evidence of derogatory comments about age, TxDOT contends these comments were "stray remarks" which cannot serve as evidence of discrimination because they were not made close in time to Flores's termination or related to the employment decision at issue. *See AutoZone, Inc.*, 272 S.W.3d at 592–93.

10

Flores responds that evidence in the record supported the jury's finding that his age was a motivating factor in TxDOT's decision to discharge him. Flores testified that Granados made comments during meetings and in response to specific incidents that Flores and other older employees were "just old guys." Moreover, Granados told these workers, "You know, you're almost out of here." Flores described Granados as stating, "well, you're almost retirement. You [are] just going to leave here in [a] little bit. You know, I'll get you there. It's coming around." He further testified that Granados remarked that older workers were "forgetting things." Additional to testimony about Granados, Flores points to his testimony that he personally witnessed Bielek "target[ed] the older guys . . . many times," by cutting them off in conversation. Flores argues that while these comments are not direct evidence of discrimination, they nonetheless constitute circumstantial evidence that TxDOT intended to discriminate against older employees including himself. Flores also points to Bielek's testimony that he participated in discussions during TxDOT meetings about how to prepare employees to replace older employees who were nearing retirement. Finally, Flores argues that his and other employees' reports to Bielek and Magallanez-Aguilar that the older employees were being discriminated against went unheeded and did not result in further investigation, which likewise suggested that TxDOT engaged in discriminatory treatment of this protected class. In sum, Flores argues that the jury could have reasonably inferred that TxDOT intended to discriminate because "TxDOT threatened older workers, criticized older workers, planned to terminate older workers, and tolerated age discrimination when reported[.]"

After construing all conflicts and inferences from the evidence in favor of the jury's verdict, including credibility determinations, we find legally sufficient evidence supporting the jury's

11

finding that Flores's age was a motivating factor in his termination from employment at TxDOT. In support of this notion, Flores testified that Bielek was constantly "targeting the older guys [in the Maintenance Section]. . . . many times." Flores also stated that Granados made these comments both in group meetings and in response to specific events. Likewise, Flores testified that Granados stated that the older employees were "forgetting things" and that they were "almost out of here" and were "almost retirement." Although the record does not indicate with particularity when these comments were made in relation to Flores's termination, nevertheless the evidence qualifies as competent, circumstantial evidence when considered with other evidence. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015). Likewise, the record suggests that Bielek attended meetings at TxDOT during which he had discussions regarding "succession planning" to encourage the replacement of older workers at TxDOT. Further, the evidence suggested that there were a large number of retirees under Granados's supervision. Flores also testified that when he approached Bielek with complaints about Granados's discrimination against himself and other workers, Bielek replied that it was time for Flores to get another job; when Flores approached Magallanez-Aguilar with complaints about his treatment at work, she simply reminded him that he worked under Granados's and Twomey's supervision. Likewise, TxDOT did not investigate Flores's EEOC charge of discrimination by questioning Bielek, Granados, or Magallanez-Aguilar, nor did it question Castillo's formal complaint of age discrimination against Granados. Finally, Flores's employment record suggests that he was an excellent employee for many years up to the time Granados became his supervisor, and it was only afterward that disciplinary issues began to surface. Based on the foregoing, the jury could have reasonably found that age was a motivating factor in TxDOT's decision to terminate Flores.

12

Further, we hold that there is legally sufficient evidence supporting the jury's finding that TxDOT's stated reasons for terminating Flores were pretextual and not credible. If an employer gives a non-discriminatory reason for the employee's termination, the employee may show that the stated reason was false by revealing weaknesses, implausibilities, inconsistences, or contradictions that a fact finder could find unworthy of credence. *See EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). As such, a jury may infer that discrimination was the real reason for the employer's decision from evidence that the termination was pretextual. *See id.* Here, TxDOT argues that Flores was terminated because he failed to follow TxDOT policy including the policy that required use of an attenuator when road crews worked on highways. Yet, as Flores points out, there was no written TxDOT policy to that effect. In any event, the record also shows that Flores directed Soto to obtain an attenuator on the morning leading up to his termination. And once he discovered the absence of an attenuator, he radioed the workers to inquire about them working without one. Granados then called in Flores and the work crew to meet in his office. Ramirez openly admitted he was responsible for the incident not Flores. Flores testified that Granados had pre-judged him as being "guilty," and that he was determined to punish him for the incident. Further, Karen Garza testified that Flores did not violate TxDOT policy during the attenuator incident.

Giving deference to the jury's determination of the witnesses' credibility, the jury could have reasonably inferred from the evidence that Flores attempted to comply with TxDOT's oral instruction regarding the use of attenuators, and that TxDOT's reliance on this reason for terminating him was false. Likewise, the jury could have reasonably inferred that Flores's performance, which was satisfactory for many years and suddenly declined when Granados

13

became his supervisor, is indicative of Granados's poor treatment of the older employees, especially when considered in conjunction with derogatory statements he made to older workers.

The evidence also suggested that the other disciplinary actions taken against Flores were false or exaggerated, and thus supporting the jury's finding that they were a pretext for age discrimination against Flores. *See Laxton v. Gap, Inc.,* 333 F.3d 572, 580–83 (5th Cir. 2003). For example, TxDOT claimed that Flores was terminated in part because of his use of a TxDOT vehicle to travel into New Mexico and to stop at a local plumbing supply store to purchase supplies for his personal business. Nevertheless, TxDOT's policy allowed employees to use TxDOT vehicles for personal use if it was done in conjunction with business operations, and it was likewise permitted for TxDOT employees to take work vehicles across state lines to go to lunch. Again, when viewed in context with the other evidence, this evidence tends to support the jury's finding that TxDOT's stated reasons for Flores's termination were pretextual for age discrimination against him.

Bearing in mind that we do not sit as a "thirteenth juror" and we may not substitute our view of the evidence for that of the jury's, we hold that the jury could have reasonably found that Flores's age was a motivating factor in TxDOT's decision to terminate him and that TxDOT's stated reasons for terminating Flores were pretextual. *See City of Keller*, 168 S.W.3d at 820–22; *Parsons*, 353 S.W.3d at 225. We therefore conclude that legally sufficient evidence supports the jury's verdict in favor of Flores. *See City of Keller*, 168 S.W.3d at 820–22. Likewise, the jury's finding cannot be said to be so against the great weight of the evidence as to be clearly wrong or unjust, and we hold that TxDOT's challenge to the factual sufficiency of the evidence must also fail. *See Parsons*, 353 S.W.3d at 225. TxDOT's first and second issues are overruled.

**Jury Charge**

14

In its third issue, TxDOT argues that the trial court reversibly erred by issuing two erroneous jury instructions. In particular, TxDOT contends that the first instruction was a "permissive pretext" instruction which confused the jury about the ultimate issue Flores had the burden of proving, and further constituted an impermissible comment on the weight of the evidence. TxDOT likewise argues that a second jury instruction constituted an impermissible comment on the weight of the evidence.

*Preservation*

As a preliminary matter, we address Flores's contention that TxDOT has not preserved this issue for our review. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. As such, an objection does not satisfy Rule 274's requirements unless "the defect relied upon by the objecting party and the grounds of the objection are stated specifically enough to support the conclusion that [the] trial court was fully cognizant of the ground of complaint and deliberately chose to overrule it." *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citation omitted); *see also* TEX. R. APP. P. 33.1. To preserve charge error for appellate review, an appellant must "clearly designate the alleged error and specifically explain the basis of its complaint in its objection to the charge." *Baker*, 355 S.W.3d at 383 (citation omitted). Objections to the charge and requests for instructions must comport with the arguments made on appeal. *Id.* (citation omitted).

During a charge conference prior to submitting the case to the jury, the trial court afforded the parties an opportunity to discuss Flores's proposed jury charge. The proposed jury charge

15

contained the following instruction:

> You are instructed that GENARO FLORES is not required to produce direct evidence of an unlawful motive. Discrimination, if it exists, is a fact which is seldom admitted, but is a fact which you may infer from the existence of other facts.

TxDOT objected that this instruction was "an improper comment on the weight of the evidence," which the trial court overruled. Because TxDOT objected to the proposed instruction at trial for the same reason it does on appeal, we hold that TxDOT properly preserved this issue for our review as the objection at trial comports with its argument on appeal. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 274; *Baker,* 355 S.W.3d at 383.

> Flores also submitted the following proposed instruction:

> Proof by a preponderance of the evidence that an employer's stated reason for an employment action is false is ordinarily sufficient to permit you to find that the employer was actually motivated by discrimination.

TxDOT also objected to this instruction, arguing that the instruction was "a comment on the weight of the evidence." Citing *Kanida v. Gulf Coast Med. Pers., L.P.*, 363 F.3d 568, 575–76 (5th Cir. 2004), TxDOT also disagreed with Flores's argument that under *Ratliff v. City of Gainesville, Tex.*, 256 F.3d 355, 359–60 (5th Cir. 2001), a trial court reversibly errs to fail to advise the jury that inferred discrimination may be established from evidence of pretext. The trial court overruled this objection as well. Again, given that (1) TxDOT objected to the instruction on the basis of it constituting a "permissive pretext" which could potentially confuse the jury, (2) the trial court overruled the objection, and (3) TxDOT's trial objection comports with its appellate argument, we hold that it has preserved this instruction for our review as well. *See* TEX. R. APP. P. 33.1; TEX. R. CIV. P. 274; *Baker,* 355 S.W.3d at 383.

*Applicable Law and Analysis*

16

We now consider whether the two instructions were erroneous. A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. A jury instruction is proper if it (1) assists the jury; (2) accurately states the law; and (3) finds support in the pleadings and evidence. TEX. R. CIV. P. 278; *Union Pacific R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). We review the trial court's submission of jury instructions for an abuse of discretion. *City of Houston*, 2017 WL 3262131, at *5 (citing *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 791 (Tex. 1995)). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Id*. (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). When an incorrect jury instruction was given, we reverse only if the instruction "was reasonably calculated to and probably did cause the rendition of an improper judgment." *Id*. (citing TEX. R. APP. P. 44.1(a)(1); *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006) (citation omitted)). We examine the entire record to determine whether the instruction probably caused the rendition of an improper verdict. *Id*. (citing *Urista*, 211 S.W.3d at 757).

Again, the trial court gave the following instruction to the jury:

Proof by a preponderance of the evidence that an employer's stated reason for an employment action is false is ordinarily sufficient to permit you to find that the employer was actually motivated by discrimination.

TxDOT argues that this was an improper "permissive pretext" instruction because "it allowed the jury to find TxDOT liable if it believed TxDOT's reason for termination was false without a finding on the ultimate issue that TxDOT was actually motivated by improper discrimination." In support of this contention, TxDOT cites previous decisions which state that an employee claiming

17

discrimination by an employer must show that the reasons for termination are "false, *and* that discrimination was the real reason [for the termination]." *Canchola*, 121 S.W.3d at 740 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original)); *Moreno*, 440 S.W.3d at 895; *Carmona*, 160 S.W.3d at 276. TxDOT also cites *Kanida*, 363 F.3d at 575–76, for the proposition that the jury can only be instructed on the ultimate issue and that "permissive pretext" instructions, such as the one above, could confuse the jury about the ultimate issue the plaintiff must prove. TxDOT also argues that the instruction amounted to an impermissible comment on the weight of the evidence because it "emphasized a determination of whether TxDOT's conclusions regarding Flores's conduct and the attenuator incident were wrong, instead of the real issue of whether age was a motivating factor in Flores's termination[,]" which likely caused the rendition of an improper judgment. TxDOT further contends that the instruction "nudged" the jury to find that age was a motivating factor in his termination.

In response, Flores argues that this instruction mirrors the Supreme Court's decision in *Toennies*, 47 S.W.3d at 476. There, the Court stated that "[p]roving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination." *Id*. at 481-82 (citing *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147–48 (2000)). Likewise, Flores points to the Fifth Circuit's decision in *Ratliff*, 256 F.3d at 359–62, which he argues stands for the proposition that the omission of a permissible-pretext instruction[3] is reversible error. There, the Fifth Circuit upheld its precedent that in light of the Supreme Court's decision in *Reeves*, 530 U.S. at 147–48, the trial

---

[3] A "permissive pretext only" instruction allows the jury discretion to enter judgment for a plaintiff if the plaintiff establishes that the defendant's reasons for terminating the plaintiff are pretextual. *Ratliff*, 256 F.3d at 361. In contrast, a "pretext plus" instruction is a stricter burden which requires a plaintiff to not only disprove an employer's proffered reasons for the discrimination, but also to introduce additional evidence of discrimination. *Id*.

18

court's inclusion of a "pretext-plus" instruction was erroneous. *Id*. at 361–62 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 n.4 (5th Cir. 2000)). Flores also argues that the instruction did not constitute a comment on the weight of the evidence, but rather was a proper explanation that the jury was permitted to infer discrimination from a particular form of circumstantial evidence.

In its reply brief, TxDOT counters that in *Canchola* the Supreme Court of Texas clarified its holding in *Toennies* by stating that an employee attempting to establish discrimination through pretext must show both that the reasons for the termination were "false, *and* that discrimination was the real reason." 121 S.W.3d at 740 (quoting *St. Mary's Honor Ctr*., 509 U.S. at 515) (emphasis in original). TxDOT also points to the Fifth Circuit's holding in *Kanida*, 363 F.3d at 573–78, which criticized its prior decision in *Ratliff* while acknowledging that it was bound by that prior decision.

We note the jury instruction's language is largely present in *Toennies*, with only slight but irrelevant difference in presentation. In *Toennies*, 47 S.W.3d at 481–82, the Texas Supreme Court explained that "[p]roving the employer's stated reason for the firing is *pretext* is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination [emphasis added]." In contrast, the jury instruction provided here states: "Proof by a preponderance of the evidence that an employer's stated reason for an employment action is *false* is ordinarily sufficient to permit you to find that the employer was actually motivated by discrimination [emphasis added]."

We find that this difference in the instruction from *Toennies* did not render the issued instruction erroneous or relieve the plaintiff of his burden of proving that age discrimination was

19

a motivating reason for the termination. The instruction correctly sets out the law and merely explains that the jury is permitted to infer discrimination from a particular form of circumstantial evidence. In *Ratliff*, 256 F.3d at 359–60, the Fifth Circuit found that omission of a permissible pretext instruction is reversible error and explained that jurors are not likely aware of the permissibility of drawing an inference of discrimination from proof of pretext. Likewise, the relevant 2018 amendment to the Texas Pattern Jury Charge (PJC) includes a "permissive pretext" instruction.[4] As such, we hold that the trial court did not abuse its discretion by including this instruction in the charge.

Also over TxDOT's objection, the trial court issued the following instruction:

You are instructed that GENARO FLORES is not required to produce direct evidence of an unlawful motive. Discrimination, if it exists, is a fact which is seldom admitted, but is a fact which you may infer from the existence of other facts.

TxDOT argues that although this instruction is a correct statement of the law, it also constituted an improper comment on the weight of the evidence because there was no direct evidence that age was a motivating factor in Flores's termination. Like the other instruction complained of, TxDOT also contends that this instruction "nudged" the jury to find that age was a motivating factor. We disagree. It is well settled in Texas that it is not error to give an instruction on circumstantial evidence. *See, e.g.*, *Larson v. Ellison*, 217 S.W.2d 420, 422 (Tex. 1949). We therefore conclude that the trial court did not abuse its discretion in giving a circumstantial evidence instruction, and

---

[4] The 2018 amendment to PJC 107.6 reads as follows:

If you do not believe the reason [the employer] has given for [*failing or refusing to hire, discharge, or (describe other discriminatory action)*], you may, but are not required to, infer that [the employer] was motivated by [the employee's] [*race, color, disability, religion, sex, national origin, or age*].

*See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment*, PJC 107.6 (2018).

20

the instruction did not constitute an impermissible comment on the weight of the evidence. TxDOT's third issue is overruled.

## Exclusion of Evidence

In its fourth issue, TxDOT argues that the trial court erred by excluding six exhibits which documented Flores's disciplinary actions while he was a TxDOT employee. We review the trial court's admission or exclusion of evidence for abuse of discretion. *Hernandez v. Moss*, 538 S.W.3d 160, 167 (Tex. App.—El Paso 2017, no pet.) (citations omitted). We will not reverse a trial court's decision to admit or exclude evidence unless the erroneous decision probably caused the rendition of an improper judgment. *Id*.; *see also* TEX. R. APP. P. 44.1(a). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or without reference to guiding principles or rules. *Hernandez*, 538 S.W.3d at 167 (citations omitted). We uphold the trial court's ruling if there is any legitimate basis in the record supporting the ruling. *Id*. (citations omitted).

At trial, TxDOT offered the following documents: Defendant's Exhibit 3, which was a written reprimand issued to Flores on July 27, 2012; Defendant's Exhibit 13, which was a written probation issued to Flores on December 6, 2012; Defendant's Exhibit 18, which was a written probation and five-day suspension issued on April 5, 2013; and Defendant's Exhibit 24, which was a written termination issued on July 31, 2013. Flores objected to the admission of these records on the basis that they constituted hearsay and because these records contained out-of-court statements constituting hearsay-within-hearsay. TxDOT responded that these documents were not offered to prove the truth of the matter asserted, but were instead offered for some other purpose. In particular, TxDOT argued that (1) Defendant's Exhibits 3 and 18 were offered to prove that it

21

was a formal disciplinary action against Flores, and that Defendant's Exhibit 13 was offered as a legitimate, nondiscriminatory reason of showing formal discipline. TxDOT did not argue that Defendant's Exhibit 24 was offered for any purpose other than the truth of the matter asserted. TxDOT did not provide an argument at trial regarding Flores's hearsay-within-hearsay objections to the admission of the exhibits. The trial court sustained Flores's objections and excluded these documents.

TxDOT also offered two exhibits containing TxDOT policies: Defendant's Exhibit 2, which was a section of the TxDOT Human Resources Manual describing disciplinary action, and Defendant's Exhibit 12, which was the TxDOT Use of Department Property Statement signed by Flores. Flores again objected to these documents on the basis of hearsay and hearsay-within-hearsay, and TxDOT did not argue that the documents were offered for some purpose other than the truth of the matter asserted. The trial court sustained the objections and excluded the evidence.

On appeal, TxDOT argues that the trial court erred by excluding the disciplinary records on the basis that they contained hearsay because they were not offered for the truth of the matter asserted, but rather "to show the formal disciplinary actions that had been taken leading up to and culminating in Flores's termination." *See* TEX. R. EVID. 801(d). Yet, as Flores points out, TxDOT did not provide a basis at trial for overcoming Flores's hearsay-within-hearsay trial objections, and does not do so on appeal; as such, we hold that the trial court did not abuse its discretion in excluding the documents on this basis. *See* TEX. R. EVID. 801(d), 805. TxDOT further argues on appeal that the disciplinary records were admissible under the hearsay exception for public records pursuant to TEX. R. EVID. 803(8); however, this argument was never made at trial and does not comport with TxDOT's complaint on appeal, and it is therefore waived. *See* TEX. R. APP. P. 33.1.

22

Even if the trial court erred in excluding the evidence, we agree with Flores's assertion that such action was nonetheless harmless. *See* TEX. R. APP. P. 44.1(a)(1). Granados, Magallanez-Aguilar, Bielek, and Flores all testified at length about the disciplinary actions taken against Flores that were recounted in the excluded documents while using the documents to refresh their recollections, and thus, we find the documents themselves were cumulative of properly admitted evidence. Likewise, TxDOT was able to examine witnesses about the excluded TxDOT policies, again using the documents to refresh recollections when needed. As such, we hold that even if the trial court erred by excluding the proffered evidence, these actions were nonetheless harmless. *See* TEX. R. APP. P. 44.1(a)(1); *see also Morale v. State*, 557 S.W.3d 569, 576 (Tex. 2018) ("exclusion [of evidence] is likely harmless if the evidence was cumulative [of other properly admitted evidence]") (quoting *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 145 (Tex. 2016)). TxDOT's fourth issue is overruled.

## Failure to Enter Findings and Conclusions

In its fifth issue, TxDOT argues that the trial court erred by finding reinstatement of Flores's employment feasible without entering findings of fact or conclusions of law, despite TxDOT's post-verdict request for findings and conclusions. In any case tried in the district court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law. TEX. R. CIV. P. 296. A trial court, however, is not entitled to make findings of fact and conclusions of law regarding issues tried to a jury. *Casa El Sol-Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 719 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd by agr.); *see also* TEX. R. CIV. P. 279. Here, Flores pleaded for reinstatement as a remedy in his petition. Following a jury trial, the jury found that Flores's age was a motivating factor in the termination

23

of his employment. As such, TxDOT was not entitled to findings or conclusions from the trial court on the issue of reinstatement. *See* TEX. R. CIV. P. 279, 296; *Fontenot*, 919 S.W.2d at 719. TxDOT's fifth issue is overruled.

**Granting Reinstatement**

In its sixth issue, TxDOT argues that the trial court erred in granting reinstatement, contending that Flores is estopped from obtaining reinstatement because "[s]ubmission of the jury question on front pay assumed a finding by the court that reinstatement was not feasible." The trial court ordered TxDOT to reinstate Flores within thirty days "to the same position he last held as an employee of Defendant . . . in the same district in which he was last employed," with the same pay, benefits, and responsibilities Flores would have as his employment had never been terminated.

Citing *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1469 (5th Cir. 1989), TxDOT argues that Flores waived the remedy of reinstatement because he submitted the jury question on front pay, which implies a finding by the court that reinstatement was not feasible. TxDOT further argues that reinstatement is not feasible because (1) Flores had found employment elsewhere between the time he was terminated and the trial; (2) animosity between TxDOT and Flores exists, as shown by the "mutual dislike and distrust between himself and local TxDOT leadership" and Flores's deposition testimony that he would not like to work for his former supervisors at TxDOT; and (3) no comparable positions at TxDOT exist, and Flores's reinstatement would require TxDOT to displace the employee who TxDOT hired to replace Flores.

Flores responds that *Hansard*, 865 F.2d at 1469–70, does not stand for the proposition that submitting an issue to the jury waives reinstatement, but rather that a federal court should not have

submitted the issue of front pay to the jury without first finding reinstatement infeasible, and that submitting one remedy to the jury results in waiver of another remedy is unfounded. Citing TEX. R. CIV. P. 279, Flores also argues that TxDOT waived its defense to reinstatement because the burden is on the party seeking to avoid reinstatement to prove that it is infeasible, and that TxDOT waived its argument by failing to request a jury finding on the issue. Finally, Flores argues that TxDOT did not prove that reinstatement was infeasible because (1) notwithstanding Flores's employment at another job, he is not required to remain unemployed to obtain reinstatement; (2) the evidence shows that Flores attempted to get his job back before filing the lawsuit, and TxDOT's references to "instances of animosity" refer to Flores's reaction to the trial testimony of TxDOT employees, an invalid litigation-related basis to deny reinstatement; and (3) that the fact that TxDOT hired another person to fill Flores's position does not provide a basis to deny reinstatement because reinstatement would be precluded in virtually every case "by hiring an innocent third party after the retaliatory purpose was achieved."

We first address Flores's waiver argument. Under TEX. R. CIV. P. 279, "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested [in the jury charge] are waived." Here, TxDOT did not request a jury finding on its defense to reinstatement. Thus, it has waived its defense to reinstatement. *See id.* TxDOT's sixth issue is overruled.

## Compensatory Damages

In its seventh issue, TxDOT argues that the evidence is insufficient to support the jury's award of compensatory damages. The various components of compensatory damages must be supported by evidence in the record. *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607,

25

614 (Tex. 1996). The evidence must show that the amount awarded is fair and reasonable compensation, and an appellate court must conduct a meaningful evidentiary review of those determinations. *Id.* An appellant must address all the elements of a multi-element damages award and show that the evidence is insufficient to support the entire damages award considering all the elements. *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 885 (Tex. App.—Dallas 2003, no pet.) (citations omitted).

For example, mental anguish damages must be supported by either "direct evidence of the nature, duration, or severity of [the plaintiff's] anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Saenz*, 925 S.W.2d at 614 (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (internal quotation marks omitted)). Conclusory statements regarding mental anguish are not sufficient to support a jury's award. *Gonzalez v. Temple-Inland Mortg. Corp.*, 28 S.W.3d 622, 626 (Tex. App.—San Antonio 2000, no pet.); *see also Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999).

Here, the components of the compensatory damages awarded by the jury included "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other noneconomic losses" in the amount of $100,000. TxDOT argues that the only evidence supporting the jury's award of compensatory damages was Flores's trial testimony that his termination was "devastating" to him, that he had lost his "pride" and "dignity," and that the termination had "affected [him] so much where, your [sic] know, it's not [him] no more. It's just not the same, you know, and it's not something that I can take, and okay, let's come back. No, sir. It's gone. It's—you're reminded of it every day." He also testified that the "damage [was] done" and "could

not be undone," that what had been done to him was "unfair, unjust, and [that he did not] wish that upon nobody."

TxDOT contends that this evidence is too conclusory to support the compensatory damages awarded. We do not agree. Under the TCHRA, compensatory damages that are recoverable include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. TEX. LAB. CODE ANN. § 21.2585. The jury was instructed on the statute's provision. On review, the record supports the jury's award as Flores testified he was dedicated to his job and proud of his performance ratings and reviews. For over twenty years, Flores dedicated himself to his work with TxDOT and took pride in what he was doing. He testified that he felt his twenty years of service had been thrown down the drain when he learned of his termination. Flores testified he not only lost his pride and dignity, but the loss of his job also affected his self-image. He explained that his termination had "broken" him. This evidence allowed a reasonable jury to conclude that Flores experienced emotional pain and suffering, loss of enjoyment of life, inconvenience, and mental anguish. Accordingly, we conclude that the record supports the jury's award of compensatory damages. TxDOT's seventh issue is overruled.

**Right to Execute**

Finally, we consider TxDOT's eighth issue in which it argues that the trial court erred by including language in the judgment which allowed Flores to pursue "such writs and processes as may be necessary to the enforcement and collection of this Judgment, for all of which let execution issue." Flores responds that this issue is not preserved for our review because TxDOT first raised this argument in its post-judgment motion to modify the judgment, and because TxDOT did not request or obtain a hearing on the motion. TxDOT responds in turn that its issue is not waived

27

because it was raised in a timely motion to modify judgment that was overruled by operation of law. We agree with TxDOT's position on preservation and will address the issue on the merits. *See* TEX. R. CIV. P. 329b(c).

TxDOT argues that it is exempt from execution because it is a state agency, citing TEX. CONST. art. 11, § 9 for that proposition. That section of the Texas Constitution only prohibits the property of counties, cities, and towns from being exempt from forced sale and taxation. Other cases stand for the proposition that political subdivisions of the State performing governmental functions are exempt from execution. *See, e.g., Fort Bend Cty. v. Martin-Simon,* 177 S.W.3d 479, 486 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Delta Cty. Levee Improvement Dist. No. 2 v. Leonard*, 516 S.W.2d 911, 912 (Tex. 1974) (public policy exempts political subdivisions of the state from execution or garnishment proceedings, and mandamus is the correct remedy by which judgments can be enforced against a political subdivision). We find this situation to be sufficiently analogous, and thus we hold that the judgment erroneously provided for the right of execution against TxDOT, a recognized entity of the state. TxDOT's eighth issue is sustained.

## CONCLUSION

Having sustained TxDOT's eighth issue, we modify the trial court's judgment to excise the language in the judgment granting Flores the right to execute. Because we overrule the remainder of TxDOT's issues, we affirm the trial court's judgment as modified.

GINA M. PALAFOX, Justice

May 15, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.